JAMES F. SMITH *vs.* BENJAMIN P. NORRIS.

Suffolk. Nov. 12, 1875. — March 6, 1876. ENDICOTT & LORD, JJ., absent.

A., the owner of a lot of land, made a contract with B., whereby A. was to advance money to B. to build houses on the land, and to convey the land to B. for a certain sum and the amount of advances; and B. was to build the houses and buy the land. B. made a contract with C. to do certain work on the houses for an entire sum. Before C. completed the work. B. went into bankruptcy, and C. afterwards in good faith went on and did some work on one of the houses under the contract, but did not complete his work owing to the failure of B. to comply with the terms of the contract. *Held*, that C. was entitled to a lien under the Gen. Sts. *c.* 150, for the value of his labor.

If the St. of 1872, *c.* 318, § 2, applies to the case of labor performed under an entire contract, the work called for by the contract not being wholly performed, owing to the failure of the other party to the contract to perform his part, it is no objection to the enforcement of a lien under the statute, that the petitioner, in his statement of a lien, has stated the value of his labor to be greater than it actually was, it not appearing that the petitioner had wilfully and knowingly claimed more than was due.

PETITION by James F. Smith and John H. Le Cain to enforce a mechanic's lien under the Gen. Sts. *c.* 150, for work done upon a block of five houses on Dennis Street in Boston.

The certificate, filed by the petitioners in the office of the city clerk on March 7, 1873, set forth that the petitioners had a claim against William Eadie and Theodore G. Brown, late co-partners under the firm name of Eadie & Brown, amounting to $400, according to an account annexed and made part of the cer-

tificate. The first item of this account, under date of February 6, 1873, was : "For 247¾ days' labor on five houses on Dennis Street, in Boston, $1050." The other items were various credits, made in 1872, amounting to $650, leaving a balance of $400. The certificate then set forth that the claim was made for and on account of labor performed and furnished in the erection of five brick houses on land owned by Benjamin P. Norris, and situate on Dennis Street in Boston, and described their situation on the street ; that the houses constituted one block ; that the labor was performed and furnished in and upon said houses by virtue of a contract entered into on September 24, 1872, between the petitioners of the one part and Eadie & Brown of the other part, a copy of the contract being annexed and made part of the certificate ; * that the petitioners had performed and furnished labor under the contract upon said houses to the value of $1050, and had received the sum of $650, leaving a balance due of $400 ; that the completion of the work was stopped without any fault on the petitioners' part; and that they ceased laboring upon said houses on February 6, 1873. The petition also set forth a claim for extra work done on said houses in accordance with directions given from time to time by Eadie & Brown, amounting to $65, after deducting all just credits ; and claimed a lien upon said houses and the land under them.

The case was sent to an auditor, who found that the respond-

* The material parts of this contract, which was made between Eadie & Brown of the first part, and the petitioners of the second part, were as follows : " The parties of the second part agree to and with the parties of the first part to furnish all the labor to complete all the carpenter work on a block of five houses on Dennis Street, now being erected by the parties of the first part, in the following manner." Then followed the specifications of the work to be done. " The work to be performed in a good, substantial and workmanlike manner, and satisfactory to the said Eadie & Brown, and to be laid out according to a plan drawn by B. P. Norris, and for the faithful performance of the same, the parties of the first part agree to pay parties of the second part the sum of three hundred dollars on each house, or fifteen hundred dollars on the whole five, in the manner following, to wit : two hundred dollars when the floor timbers are on the whole five, two hundred and fifty dollars when finished outside, two hundred and fifty dollars when ready for plastering, four hundred dollars when the standing finish is up, and the balance of four hundred dollars when the buildings are all completed."

ent was the owner of the land described in the petition; that on August 20, 1872, he and Eadie & Brown made and signed the following contract under seal:

"Agreement of sale made and concluded this twentieth day of August, A. D. 1872, by and between Benjamin P. Norris, of Boston, in the county of Suffolk, of the first part, and William Eadie and Theodore G. Brown, both of said Boston, of the second part, witnesseth, that the said Norris agrees to sell and convey, and said Eadie & Brown agree to purchase, a certain parcel of land situated on the northwesterly side of Dennis Street in said Boston." Then followed a description of the land. "Said Eadie & Brown agree to pay for said land at the rate of one dollar per square foot, being sixty-eight hundred and four dollars in all, and interest as hereinafter stated. Said Eadie & Brown are to commence immediately to erect on said land five two-story and French roof brick dwelling houses, each measuring at least seventeen feet front by thirty-seven feet deep, with two-story bay windows, and each house containing ten rooms and cellar, and being fitted for two families, with separate gas-pipes for each family, to be finished in good style, and each house to cost not less than thirty-five hundred dollars above the land. And said Norris is to advance to an amount not exceeding two thousand dollars in money and materials for the building of each of the said houses, at such times and in such amounts as he shall deem safe and expedient, reference being had to the progress of the said buildings. Deed or deeds of said premises free from all incumbrances, shall be given within seven months from this date by said Norris, provided always said Eadie & Brown shall, within said period, pay to said Norris all of said purchase money, together with taxes and interest thereon from this date at the rate of seven and $\frac{3}{10}$ per centum per annum; and all moneys advanced by said Norris, together with interest thereon, at the rate of eighteen per centum per annum, from the respective times when such advances are made, and the value in money of all materials furnished by said Norris or procured by his order or indorsement, together with such interest or expenses on the same as the said Norris may be obliged to pay. But if said payments are not made within said period of seven months, then this agreement is to be null and void."

Indorsed upon this contract was an assignment by the assignee in bankruptcy of Eadie & Brown, dated February 18, 1873, of all their rights in the contract to Isaac G. Caswell; and an agreement, dated February 21, 1873, signed by Norris, whereby he agreed to be bound, by all the covenants contained in the contract, to Caswell and one Weeks, as fully and completely as though the contract had been originally executed by them, and extending the contract to June 20, 1873.

The auditor further found that on September 24, 1872, Eadie & Brown, with the knowledge of the respondent, entered into the contract with the petitioners, as alleged in their petition; that the petitioners, with the knowledge and consent of the respondent, proceeded to build the houses as required by the contract; that most of the carpenter's work necessary to be done, before the houses were plastered, was done before December 12, 1872, on which day Eadie & Brown filed a petition in bankruptcy; that the petitioners were prevented from completing their contract with Eadie & Brown, by the failure of the latter to furnish the materials, as required by the contract; that some work was done by the petitioners after December 12, 1872, on one only of the houses, which work was done in good faith, with the expectation that they were to go forward and finish the work under the contract; that the labor on the houses ceased on February 6, 1873; that five eighths of the entire work called for by the contract was performed by the petitioners at the time the labor ceased; that one or the other of the petitioners either had knowledge of the bankruptcy of Eadie & Brown prior to February 6, 1873, or had knowledge of such facts as should have put them on inquiry; that the value of this work was $937.50; and that the petitioners were entitled to receive therefor the sum of ·$287.50, being the amount remaining after deducting $650, the amount of money received. The auditor also found that the petitioners had done extra work, with the knowledge and consent of the respondent, to the amount of $65, for which they were entitled to a lien; and that they were entitled to recover as compensation for the work done under the contract and for extra work the sum of $352.50.

The Superior Court ordered judgment for the petitioners for $357.79; and the respondent appealed to this court.

*R. Lund & J. M. Browne*, for the petit. oners.

*J. R. Churchill & H. E. Ware*, for the respondent.  1. If Eadie & Brown had authority to act for the respondent, in subjecting his land to a lien, their authority ceased by operation of law, without actual notice, upon the filing of their petition in bankruptcy, on December 12, 1872, and the consequent assignment of their estate and contracts to their assignee in bankruptcy.  Bump on Bankruptcy, (8th ed.) 476.  *Mays* v. *Manufacturers' National Bank*, 64 Penn. St. 74.  *Johnson* v. *Geisriter*, 26 Ark. 44.  *In re Anderson*, 9 Bankr. Reg. 360.  The agreement of sale is the only authority which the petitioners have shown Eadie & Brown ever had in the matter; and, nearly three months before the certificate of the petitioners was recorded, they lost this authority by assignment, and the petitioners had constructive knowledge thereof.  It also appears, if the fact is material, that the petitioners had actual knowledge of the bankruptcy.

2. The subsequent indorsement by the respondent upon the agreement of sale has, in law, the effect of an entirely new contract between the respondent and strangers.  The petitioners are in no way parties thereto, and the respondent is not bound thereby as against them in this proceeding.  If work, done subsequently to bankruptcy of Eadie & Brown, was done under a new contract, it was done upon one of the houses only, and the lien, if any, would only attach to that house.  *Landers* v. *Dexter*, 106 Mass. 531.

3. By the Gen. Sts. *c.* 150, § 5, the amount claimed was to be set forth; the St. of 1872, *c.* 318, § 2, seems to require a statement of the actual value, and the statute must be strictly complied with.  *Williams* v. *Amory*, 14 Mass. 20, 29.

DEVENS, J.  The contract between Norris and Eadie & Brown was similar to that in *Hilton* v. *Merrill*, 106 Mass. 528.  It was one of the purposes of their agreement that Eadie & Brown should proceed to erect a block of houses upon the land which, on certain terms, Norris was to convey to them, and for this purpose Norris was to advance a specified amount of money.  By implication he authorized Eadie & Brown to employ, either directly or through sub-contractors, the workmen necessary for this object, and the labor thus employed was performed by intendment of the statute, with the consent of Norris.

The petitioners, in making their contract and entering upon its performance, had a right to rely not only on the promise of Eadie & Brown, but also on their lien upon the property as security for the work which they might do under it. When, therefore, Eadie & Brown became bankrupt, even if they were no longer personally liable for what the petitioners might afterwards do under their contract, the petitioners could still go on, relying upon their lien on the property, and finish the work for which they had contracted, if in so doing they acted in good faith and for the purpose of completing their contract. The labor thus done would be under the authority which it must be inferred Norris had given Eadie & Brown to employ workmen, and would be performed on his estate with his consent.

Nor are the petitioners to lose their lien because, acting in good faith, they have failed fully to complete all the labor they agreed to perform ; that which they have done has been under the contract, to which the respondent consented, and it is that consent which subjects his estate to the lien. If, by the failure of the workmen in such a case fully to perform, any injury should have been occasioned, or their labor should have been less valuable, there might be a deduction from the contract price by way of recoupment. No such question has, however, been here presented. It has been found that what the petitioners have done, since the bankruptcy of Eadie & Brown, they did in good faith, expecting to be able to finish their contract, and that they have failed because the necessary materials were not furnished. They are entitled, therefore, to judgment for the amount which the auditor has decided to be due, having filed the necessary certificate within thirty days after the completion of the labor which they were able to perform.

Assuming, but not deciding, that the St. of 1872, *c.* 318, was intended to apply to an entire contract like that in the case at bar, which was for work and labor only, the certificate filed was still sufficient to meet all the requisitions of § 2 of that statute. In addition to the statements required by the Gen. Sts, *c.* 150, § 5, it set forth the entire price for the entire contract, the number of days' labor performed, and the value of the same. Even if the value as stated was more than that which has been found to be due, the St. of 1872 is but an extension of the Gen. Sts. *c.* 150

and, as it does not appear " that the person filing the certificate
has wilfully and knowingly claimed more than is his due," the
inaccuracy in the statement does not " invalidate the proceed-
ings." Gen. Sts. c. 150, § 6. This certificate having been filed
within thirty days after the completion of the labor which the
petitioners were able to perform, they are therefore entitled to
judgment for the amount which the auditor has found to be due.

                                             *Judgment affirmed.*