ALLAN M. BROWN *vs.* JAMES F. HADDOCK, ALEXANDER A. SANBORN, intervening petitioner.

JAMES A. KING *vs.* CHARLES F. BAXTER.

Suffolk.   June 16, 1908. — September 4, 1908.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Mechanic's Lien.   Statute.   Words,* "Consent."

At the trial of issues framed for a jury regarding two petitions for the establishment of liens for work performed, and one for labor performed and materials furnished, in the construction of buildings upon certain land, there was evidence tending to show the following facts: In June of a certain year one B. owned the land. At that time one H. made an agreement in writing with a certain bank that the bank should make loans to H. in instalments as work upon buildings to be erected by him on the premises in question progressed, the loans to be secured by a mortgage upon the premises. In July of the same year B. agreed in writing with H. to sell to him the land and to convey it on or before January of the next year "free from all incumbrances, except" a restriction as to the nature of buildings to be erected thereon, H. to pay a part of the purchase price in cash, and B. to take a mortgage on the premises as security for the payment of the remainder. Thereafter, and before conveyance by B. to

H., they together examined plans for the buildings, and B. approved of them, knew that H. was to procure money from the bank for their construction, and knew that work was being done on the premises and that materials were being furnished for the erection of the buildings by various parties under contracts with H. Such contracts were made by the petitioners and all work for which liens were claimed by two of them was performed and two stories of two buildings on the premises were put up before B. conveyed to H. All work done and materials furnished by the third petitioner was done and performed after such conveyance. At the same time that the conveyance was made, H. gave a first mortgage to the bank and a second mortgage to B. Subsequently, and before the petitions were filed, B. entered to foreclose his second mortgage. No notice in writing had been given to B. by any of the petitioners before any of the labor was performed or furnished or the materials furnished. *Held*, that the jury were warranted in finding that the labor performed and materials furnished by the petitioners were performed and furnished with the consent of B., who was the owner of the land when the petitioners' contracts were made with H., also that the seisin of H. "was not instantaneous as against B.," and that the liens should be established.

Under Pub. Sts. c. 191, § 1, now R. L. c. 197, § 1, the consent of the owner of land, or of any person having authority from or rightfully acting for such owner, which is required for the establishment of a mechanic's lien for labor performed or furnished or for materials furnished in the erection, alteration, repair or removal of a building or structure upon such land, is consent to the performance of the work or to the furnishing of the materials, not to the creation of a debt for such labor or materials.

One, who had an entire contract with the owner of certain land for the performance of labor and furnishing of materials for the construction of a building thereon, performed labor, and then filed in the registry of deeds the certificate required by Pub. Sts. c. 191, § 6, stating that he had a claim for both labor performed and materials furnished, but not itemizing the claim for labor. Afterwards he brought a petition to establish a lien for the labor performed only, at the trial of which it was agreed that there was no intention on the part of the petitioner to mislead, and that the respondent was not misled, "by reason of an inaccuracy in stating or failing to state the contract price, the number of days of labor performed or furnished and the value of the same." *Held*, that the inaccuracies in the certificate did not prevent the establishment of the lien.

TWO PETITIONS, filed in the Superior Court for the county of Suffolk March 22, 1901, and April 17, 1901, respectively, for the establishment of mechanics' liens on property at the corner of Bowdoin and Greenbrier Streets in that part of Boston called Dorchester. An intervening petition was filed in the first case on June 1, 1901.

The certificate filed in the registry of deeds by the intervening petitioner Sanborn claimed a lien for " labor performed and materials furnished " upon the premises, the charge in the account reading, without items, " To furnishing and erecting steam heating apparatus . . . as per contract."

The certificate filed in the registry of deeds by the petitioner King claimed a lien for " labor performed and furnished under an entire contract " by which the petitioner was to excavate cellars, " furnish and lay stones including materials for the cellar walls, . . . etc."

The certificate of the petitioner Brown claimed a lien for labor only, according to an account annexed.

The petition of Sanborn sought to establish a lien for both labor and materials in the performance of the entire contract described in his certificate, which was alleged to have been made with Haddock ; that of King sought to establish a lien only for labor performed under .the entire contract described in his certificate, which was alleged to have been made with Haddock, " who had authority from and was acting for Baxter " ; and that of Brown sought to establish a lien for labor performed.

The cases were referred to and tried together before an auditor on issues framed by the court. The auditor filed a report in which he found, in brief, that on June 8, 1900, before he had agreed with Baxter to purchase the property in question, Haddock made an agreement in writing with the Boston Penny Savings Bank according to which the bank was to lend him $7,000 in certain proportions as the buildings progressed on each house which he was to build on the property. On July 15, 1900, Haddock and Baxter made an agreement in writing whereby Baxter agreed to sell and Haddock to purchase the property, the agreement providing that the lots were to be conveyed before January 1, 1901, by Baxter, he to convey " a good and clear title to the same free of incumbrances, except " a restriction as to the nature of the buildings to be erected thereon, and that Haddock was to pay a certain proportion of the price in cash upon delivery of the deed, the balance to be secured by a mortgage.

Deeds from Baxter to Haddock as to various lots into which the premises were divided, first mortgages as to each lot from Haddock to the Boston Penny Savings Bank and second mortgages to Baxter were recorded simultaneously on August 15 and September 14, 1900. On March 2 and 18, 1901, Baxter entered to foreclose under his second mortgages, and sold the premises at foreclosure sale under said mortgages, he being the purchaser.

Further findings in the report were as follows :

Previous to the time of the conveyance of the lots from Baxter to Haddock, they both contemplated the erection of buildings by Haddock on the property, and Baxter had knowledge of the kind of houses to be erected, had seen the plans of the houses and approved of them, and had knowledge that the money was to be procured by Haddock from the Boston Penny Savings Bank, which bank was to hold first mortgages on the property. Baxter gave the lines for the building on the corner of the streets to an employee of said King, saw certain trees being cut on the premises, knew that work was being done on the premises prior to the conveyance of the property from him to Haddock, and knew that labor and materials were being furnished by sundry parties under contracts with Haddock for the erection of said buildings on said premises. The buildings on two of the lots were up to and beyond the second story before the conveyances were made from Baxter to Haddock. Haddock could not get any money from the bank on the first mortgages until the buildings were up to a certain point, and Baxter knew that fact. Baxter knew that he could not get any money from Haddock in payment of the land until Haddock got the money from the bank on account of the mortgage. The contracts of King and Brown were made with Haddock previous to the conveyances from said Baxter to Haddock, and therefore, as to each of the petitions of King and of Brown on the issues framed for the jury, he found: (1) The labor of the petitioner furnished before the delivery of the deed from Baxter to Haddock was furnished with the consent of the owner. (2) Baxter at the time of the delivery of the deeds of the premises described in the petition from him to Haddock knew that Haddock was building houses on the said premises. (3) The contract between Baxter, or some person acting for him, and the petitioner, referred to in the petition, was made prior to the time of the delivery of the deeds of the premises described in the petition from Baxter to Haddock. (4) The labor of the petitioner which was furnished after the delivery of the deed from Baxter to Haddock was furnished with the consent given prior to the delivery of said deed of the owner at the time of such consent. (8) No notice in writing was given by the petitioner to the owner of the property before any of the materials [or labor] were furnished by the petitioner.

In regard to the lien of Sanborn, on the issues framed for the jury, the auditor found that no labor or materials of the petitioner were furnished on the respective lots before the delivery of the deeds as to such lots from Baxter to Haddock; and made other findings to the same effect as those numbered two to eight with regard to the other petitions.

The respondent Haddock was defaulted.

At the trial, which was before *Schofield*, J., the auditor's report was introduced in evidence. There was other evidence tending to corroborate the auditor's findings.

At the close of the evidence, the respondent Baxter requested the following rulings :

(1) That upon all the evidence the jury must find that Baxter gave no consent to the creation of mechanics' liens upon the property described in the petition.

(3) " That the fact that the agreement between Baxter and Haddock provided that Baxter should convey the lots to Haddock by a good and clear title free from incumbrances except the restriction stated in the agreement and that Baxter should take a second mortgage from Haddock subject only to a first mortgage on each lot for a part of the purchase money, with the fact that such deeds and mortgages were given by Baxter and Haddock respectively covenanting that the lots were free from all incumbrances, was in the absence of direct proof that Baxter ratified Haddock's contracts with petitioner, `inconsistent as a matter of law with the creation of liens having priority to said mortgages or that Baxter gave consent to Haddock to incumber the title of the property by liens ahead of said mortgage."

(7) The " consent " of the owner or of some one acting for the owner in the laws relating to mechanics' liens must mean a consent to the creation of a debt for the labor or materials furnished.

The requests were refused and the issues framed were submitted to the jury, who found as had the auditor; and the respondent Baxter alleged exceptions.

After verdict on the issues and at the hearing before the presiding judge on the matter of the decree, the parties agreed " that, in the matter of the certificates filed in the registry of deeds by the petitioners King and Sanborn, the respondent Baxter admits that, in filing said certificates by said petitioners, there

was no intention to mislead and that he, said Baxter, was not in fact misled by reason of an inaccuracy in stating or failing to state the contract price, the number of days of labor performed or furnished and the value of the same; but said Baxter had only the knowledge of the particulars of the labor and materials furnished by said King and Sanborn as found by the jury and as stated in his testimony before the jury as shown in the bill of exceptions."

On motions by the petitioners, judgments and sales of the property were ordered, and the respondent Baxter appealed.

The case was submitted on briefs.

*W. B. Grant*, for the respondent Baxter.

*A. S. Hayes & A. G. Sleeper*, for the petitioner Sanborn.

*S. Keyes*, for the petitioner Brown.

*C. F. Eldredge*, for the petitioner King.

KNOWLTON, C. J. The question argued by the respondent is whether there was evidence to warrant a finding that the labor and materials furnished by two of the petitioners, and the labor furnished by the other petitioner, were furnished with the consent of the respondent Baxter, who was the owner of the real estate at the time when their respective contracts were made. The report of the auditor on this point, the testimony of the respondent himself, and the other evidence in the case, not only well warranted, but almost required this finding, under the rule of law stated in *Davis* v. *Humphreys*, 112 Mass. 309, *Carew* v. *Stubbs*, 155 Mass. 549, *Smith* v. *Norris*, 120 Mass. 58, *Worthen* v. *Cleaveland*, 129 Mass. 570, and *Hilton* v. *Merrill*, 106 Mass. 528.

The respondent's seventh request for a ruling was rightly refused. The petitioner was not called upon to show consent of the owner to the creation of a debt for the labor or materials furnished, but only his consent to the furnishing of the materials or the performance of the labor in the erection of a building on his real estate. Pub. Sts. c. 191, § 1. R. L. c. 197, § 1. In the language of the opinion in *Vickery* v. *Richardson*, 189 Mass. 53, 55, the consent required " is to the performance of the work, not to the lien, or the amount for which under it the interest of the owner in the land can be charged."

The respondent's contention as to the inaccuracy in the certifi-

cate is met by the agreed statement of facts and by the decision of this court in *Devine* v. *Clark*, 198 Mass. 56. See also *Smith* v. *Norris*, 120 Mass. 58; *Vickery* v. *Richardson*, 189 Mass. 53.

Inasmuch as the contract of Sanborn to furnish materials was made with the consent of the owner of the real estate and of the contractor that bargained for them, who became the owner of the real estate before the materials were furnished, so that the contract was made with the person who was the owner when they were furnished, it was not necessary to give a notice of an intention to claim a lien to the former owner who subsequently had acquired a different interest under a mortgage. *Carew* v. *Stubbs*, 155 Mass. 549.

Apart from this, the trial judge rightly found that the respondent's title by mortgage was not acquired under a mortgagor who had only an instantaneous seisin. Before the respondent's mortgage took effect, the mortgagor had made an important contract with the holder of the first mortgage, whereby he had acquired rights to be exercised in the use of the property, and had given rights in it. In this respect the case comes within the decision in *Libbey* v. *Tidden*, 192 Mass. 175, 185.

*Exceptions overruled; orders of judgment and sale affirmed.*